# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| State Farm Fire & Casualty Insurance Company,<br><br>      Plaintiff,<br>vs.<br><br>Island Realty, Inc., Susan Paish, and Lance Paish,<br><br>      Defendants. | C/A No. 2:25-cv-13401-RMG<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(Non-jury)** |

Plaintiff State Farm Fire & Casualty Company, by and through its undersigned counsel, complaining of Defendants Island Realty, Inc., Susan Paish, and Lance Paish, alleges and would show as follows:

## NATURE OF ACTION

1. This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. There is a real and justiciable controversy between the parties, the parties are interested parties, and Plaintiff State Farm Fire & Casualty Company ("Plaintiff" or "State Farm") asks the Court to declare the rights and obligations of the parties.

2. The Court's declaration will confer certainty on the parties and serve the interests of justice.

3. State Farm is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois. State Farm is an insurer whose policies are sold and delivered in South Carolina.

1

4. Upon information and belief, Island Realty, Inc., is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

5. Upon information and belief, Susan and Lance Paish are residents of the State of Washington but own the property relevant to the underlying action and managed by Defendant Island Realty, Inc. in Mount Pleasant, South Carolina.

6. Jurisdiction exists because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, including the potential costs of defending and indemnifying any potential insureds in the underlying dispute, potentially exceeds $75,000.00. Thus, this Court has jurisdiction based upon 28 U.S.C. § 1332(a).

7. Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court regarding an insurance policy issued by Plaintiff to Defendant at an address in Charleston, South Carolina and insuring its business in Charleston, South Carolina.

## FACTUAL BACKGROUND

**A. Underlying Lawsuit**

8. This declaratory judgment action arises out of underlying claims involving mold exposure.

9. On July 23, 2024, Tonya and Mark Kurtz ("Underlying Plaintiffs") filed a Summons and Complaint in the Court of Common Pleas for Charleston County, South Carolina, Case No. 2024-CP-10-03708 ("Underlying Lawsuit"), against Defendants Island Realty, Inc. and Susan and Mark Paish. A true and accurate copy of the Complaint is attached as **Exhibit A**, the allegations of which are incorporated herein by reference.

10. According to the Complaint, Defendant Island Realty, Inc. is the property manager for the Subject Home located at 1413 Wellesley Circle in Mount Pleasant, South Carolina, which

is owned by Defendants Susan and Lance Paish ("the Paishes"), whom Plaintiff alleges is in the business of owning and leasing rental properties.

11. Underlying Plaintiffs allege that in or around July 2022, they notified Island Realty of various water intrusion issues within the subject home including water intrusion from the roof and windows and requested Island Realty conduct a roof inspection and make any necessary repairs. The Complaint contends that all underlying defendants refused to conduct a roof inspection and, as a result, approximately six (6) months later, Mrs. Kurtz's health began to decline. Underlying Plaintiffs allege that her medical providers identified an increased level of mycotoxins in her body caused by her exposure to mold and airborne toxins in the home.

12. Underlying Plaintiffs allege that Defendants' prolonged delay in fixing the roof also resulted in water intrusion behind the siding and into the particle boards throughout the home, and that although Defendants replaced the roof and gutters in August 2023, they failed to remediate the mold within the walls and throughout the home.

13. Underlying Plaintiffs contend that upon instruction of medical providers, they vacated the home, as Mrs. Kurtz's body contained elevated levels of various mold groups, all of which can cause significant health issues. In the Underlying Action, it is asserted that testing of the home revealed pervasive and long-term levels of mycotoxins, which have led to serious health issues for Mrs. Kurtz.

14. In the Underlying Action, it is apparent that all of Underlying Plaintiffs' damages arise out of mold exposure. For example, Mrs. Kurtz testified that as a result of her exposure to mold, she has suffered and continues to suffer from several physical conditions including insomnia, body aches extreme weakness, headaches, dizziness, heart palpations, infections, joint swelling and pain, nausea, and neurological issues. (**Exhibit B**, T. Kurtz Dep., 88:7-18; 379:1-

14). Further, Mrs. Kurtz testified as to mental conditions she suffered and continues to suffer as a result of the mold exposure, including difficulty remembering things and staying on tasks, and feeling easily overwhelmed. (T. Kurtz Dep., 89:1-4).

15. Moreover, several of Mrs. Kurtz's medical care providers diagnosed her medical condition and symptoms as being related to her mold exposure. (T. Kurtz Dep., 314:3-7). Mrs. Kurtz's psychiatrists have also attributed Mrs. Kurtz's mental conditions to her mold exposure. (T. Kurtz Dep. 319:15-21). Many of these symptoms Mrs. Kurtz did not experience prior to the mold exposure. (T. Kurtz Dep., 389:10-391:6).

16. As of April 2025, Mrs. Kurtz was still treating with her physicians, neurology, cardiology, endocrinology, holistic doctors, and chiropractors for conditions resulting from her exposure to mold. (T. Kurtz Dep., 400:3-401:2). Mrs. Kurtz began seeing many of these specialists following and for the purpose of treating her exposure. (T. Kurtz Dep., 356:13-358:18). Mrs. Kurtz still takes many prescribed medications related to her mold exposure today, and her damages are all a result of treatments received in conjunction with her exposure to mold. (T. Kurtz Dep., 437: 10-439:7; 381:7-389:3).

17. State Farm is currently defending Island Realty and the Paishes in connection with the Underlying Lawsuit under a full reservation of rights.

**B. The Policy**

18. State Farm issued a Rental Dwelling Policy, policy no. 99-BK-R037-1, to named insureds Susan and Lance Paish for the policy periods of March 2, 2023 to March 2, 2024, March 2, 2024 to March 2, 2025, and March 2, 2025 to March 2, 2026. ("the Policy"). Island Realty is also an insured by definition of the Policy. A true and correct copy of the Policy is attached as **Exhibit C**, and the terms of the Policy are incorporated as if fully stated herein.

19. The business liability limits under Coverage L are $1,000,000, and other potentially applicable limits of insurance are $2,000,000 (general aggregate limit) and $2,000.000 (products/completed operations aggregate limit).

20. The Policy provides, in relevant part, as follows:

**SECTION II – DEFINITIONS**

    1.    "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. **Bodily injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

    \*\*\*

    4.    **insured** means:

        a.    if the **named insured** is designated in the Declarations as an individual and is a sole proprietor, the named insured and spouse;

        b.    if he **named insured** is designated in the **Declarations** as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof;

        c.    if the **named insured** is designated in the **Declarations** as other than an individual, partnership or joint venture, the organization trustees, directors or governs or stockholder thereof while acting within the scope of their duties;

        d.    any employee of the **named insured** while acting within the scope of that employment;

        e.    any person or organization while acting as real estate manager for the **named insured**.

    The insurance afforded applies separately to each **insured** against whom claim is made, or suit is brought, except with respect to the limit of our Company's liability.

This insurance does not apply to **bodily injury** or **personal injury** or **property damage** arising out of the conduct of any partnership or joint venture which is not designated in this policy as a **named insured**;

5. **insured premises** means:

    a. the **residence premises**;

    b. one or two family premises of which you acquire ownership or control and for which you report your intention to insure under this policy within 30 days after acquisition;

    c. the ways immediately adjoining on land;

    d. one or two family dwelling premises alienated by any **insured** if possession has been given to others.

\* \* \*

8. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

    a. **bodily injury;**
    b. or **property damage**; or
    c. **personal injury**.

    during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

9. "**personal injury**" means injury arising out of one or more of the following offenses:

    a. false arrest, detention or imprisonment or malicious prosecution;

    b. libel, slander or defamation of character; or

    c. invasion of privacy, wrongful eviction or wrongful entry.

10. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not considered to be **property damage**;

11. "**residence premises**" means the one or two family dwelling, other structures, and grounds which is shown in the **Declarations**.

6

* * * *

21.     The policy's insuring agreement provides as follows:

**Coverage L – Business Liability**

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury**, **personal injury** or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance or use of the **insured premises**, we will:

   1.   pay up to our limit of liability for the damages for which the **insured** is legally liable; and

   2.   provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of insurance.

The total limit of the Company's liability for all **occurrences** in any one policy year shall not exceed the annual aggregate limit shown in the **Declarations** for Coverage L – Business Liability.

22.     Additionally, the policy contains a Fungus (Including Mold) Exclusion Endorsement, found in Form FE-5722, which states:

**DEFINITIONS**

The following definition is added:

**fungus** means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

* * * *

**SECTION II – EXCLUSIONS**

In all policies, the following exclusion is added to item 1:

l.      any:

   (1)   **bodily injury**, **personal injury**, or **property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact

7

with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

(2) loss, cost or expense arising out of any:

a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus**; or

b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus**.

All other policy provisions apply.

23. The damages being sought in the Underlying Lawsuit are barred from coverage under the Fungus (Including Mold) Exclusion Endorsement, found in Form FE-5722.

24. State Farm is entitled to a judicial declaration that it owes no duty of defense or indemnification to Defendants regarding the claims against them in the Underlying Lawsuit.

## **FOR A FIRST DECLARATION**

25. State Farm realleges and incorporates by reference all of the allegations set forth above.

26. Underlying Plaintiffs' Complaint solely concern Mrs. Kurtz's ingestion, inhalation and /or exposure to mold or mildew and the resulting bodily injury, property damage, and personal injury resulting therefrom.

27. More specifically, the injuries and damages alleged by Plaintiffs in the Underlying Lawsuit, specified in Mrs. Kurtz's deposition testimony, arise out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungus, including mold, and arise out of cleaning, removing, containing, treating, detoxifying, neutralizing,

8

remediating or disposing of, or in any way responding to or assessing the effects of mold and fungus at the Subject Home.

28. According to the Endorsement, these allegations and damages are specifically excluded.

29. Thus, because there is no coverage under the Policy, no duty to defend or indemnify Defendants arises under the Policy, and State Farm is entitled to a declaration from this Court that it has no defense or indemnification obligations under the Policy in connection with the claims alleged in the Underlying Lawsuit because this coverage is barred.

WHEREFORE, a justiciable controversy exists between the parties in this action arising out of these claims. Therefore, State Farm prays that the Court enter judgment in its favor:

a. Declaring the Policy's Fungus (Including Mold) Exclusion Endorsement precludes coverage for the claims asserted in the Underlying Lawsuit; and

b. Declaring that State Farm has no duty to defend or indemnify Defendants against the claims asserted in the Underlying Lawsuit.

State Farm prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

**GALLIVAN, WHITE & BOYD, P.A.**

By: s/ Jessica W. Laffitte
Jessica W. Laffitte (Fed ID 11846)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia South Carolina 29202
803-779-1833
jlaffitte@gwblawfirm.com

*Attorney for Plaintiff State Farm Fire & Casualty Company*

November 14, 2025